UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Clara Cotton, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 3:20-cv-00074 JD-MGG |
| Ethicon, Inc. et al., | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Plaintiffs Clara Cotton and Zack Cotton initiated this litigation on May 23, 2014, by filing a short form complaint as a part of *In re Ethicon, Inc. Pelvic Repair System Products Liability Litigation*, MDL No. 2327, a multidistrict litigation pending in the United States District Court for the Southern District of West Virginia (the "MDL"). The MDL involves allegedly defective women's pelvic mesh products manufactured by Defendant Ethicon, Inc., a wholly owned subsidiary of Defendant Johnson & Johnson (collectively "Ethicon"). [DE 48 at 3]. On January 23, 2020, this case was transferred from the MDL to this Court, and the parties' status report indicates that they would like to set a trial date in 2021. [DE 47]. Ethicon filed a Motion for Partial Summary Judgment on October 18, 2018, seeking dismissal with prejudice of several of the Cottons' claims. On April 24, 2020, Ethicon filed a motion to reinstate its motion for partial summary judgment, which the Court granted. [DE 69]. As set forth below, Ethicon's Motion for Partial Summary Judgment is granted in part and denied in part. [DE 21].

### I. Factual Background

In 2007, Ms. Cotton was diagnosed with pelvic organ prolapse and stress urinary

incontinence ("SUI"). Dr. Carlton Lyons, a gynecologist, recommended surgical repair of the prolapse with products manufactured by Ethicon. [DE 23 at 1]. On November 9, 2007, Ms. Cotton underwent a surgical procedure where Dr. Lyons implanted a Prolift Anterior Pelvic Floor Repair System ("Prolift") and a TVT-O Obturator System ("TVT-O") to address the prolapse and SUI. [*Id*. at 2].[1] Both products utilize a synthetic mesh produced by Ethicon to address issues related to prolapse in women. The transvaginal mesh products were marketed to gynecologists, urologists, and urogynecologists as mesh designed to address the symptoms associated with prolapse, which can have an impact on urination and bowel function in addition to other quality of life issues such as pelvic fullness, pressure, and interference with sexual activity. [DE 23-2 at 4-5 and 14].

Several years after the implantation of the mesh products, Ms. Cotton started to suffer from pelvic pain, urinary tract infections, incontinency, and swelling of her bladder. *Id.* She also started to suffer from dyspareunia, which is experiencing pain while participating in sexual intercourse or sexual activity. Several physical examinations in 2013 and 2014 revealed vaginal atrophy and exposure of the mesh. *Id.* During this time period, Ms. Cotton experienced no relief and medication did not alleviate her symptoms. *Id.* Ms. Cotton's symptoms got worse, and physical therapy did not help. She testified that she has more pain when she is active. [DE 23-7 at 166-67].[2] Based on her experience following the implantation of the Prolift and TVT-O, Ms. Cotton now claims to have suffered bodily injuries as a result of Ethicon's products.

During her deposition, Ms. Cotton testified that Dr. Lyons did not tell her that erosion of the mesh coming through the vagina was a potential surgery risk. [*Id*. at 69]. Ms. Cotton also

---

[1] In Ms. Cotton's Amended Fact Sheet, the Pelvic Mesh Products are identified as: Gynecare TVT System and Gynecare Prolift. [DE 23-1 at 5].
[2] The page numbers referenced in Ms. Cotton's deposition refer to the page numbers assigned by the Court Reporter and not the actual page count of the document.

testified that Dr. Lyons did not discuss the possibility of pelvic pain or that either chronic pelvic pain or chronic dyspareunia were potential complications or risks of the surgery. [*Id*. at 70]. However, Ms. Cotton testified that Dr. Lyons did tell her about the risk of surgeries that is common to all patients. [*Id*. at 185]. She confirmed that Dr. Lyons did not tell her about the risks of erosion, and she did not remember him telling her about any potential complications. *Id*. at 186. She also testified that she was not warned about the risk of chronic pain following the surgery or that painful intercourse was a risk. [*Id*. 185-86]. Notably, Ms. Cotton clarified her testimony:

> I don't remember him telling me anything about any mesh . . . if he had told me that, I probably wouldn't have had it done, had him to do it because if he [is] going to tell me that something is going to erode in me and I'm going to . . . not have – be able to have sex with my husband, I wouldn't have had it done. I would have been crazy.

[*Id*. at 187].

In his affidavit, Dr. Lyons testified that he was not told by Ethicon that it was concerned about any erosion or contraction associated with implanting the Prolift mesh, or that Ethicon needed to develop a safer mesh because of problems encountered with contraction and erosion. [DE 23-8]. In addition, case specific expert Daniel S. Elliott, M.D., opined that the implantation of the polypropylene mesh, as well as the subsequent foreign body reaction and chronic inflammatory response, led to the development of extensive scarring, which continues to cause Ms. Cotton pain and dyspareunia and compromises her quality of life. [DE 23-5 at 61-64].

Ms. Cotton filed this lawsuit on May 23, 2014. She asserted the following claims in her short form complaint:

Count I – Negligence;

Count II – Strict Liability – Manufacturing Defect;

    Count III – Strict Liability – Failure to Warn;

    Count IV – Strict Liability – Defective Product;

    Count V – Strict Liability – Design Defect;

    Count VI – Common Law Fraud;

    Count VIII – Constructive Fraud;

    Count IX – Negligent Misrepresentation;

    Count X – Negligent Infliction of Emotional Distress;

    Count XI – Breach of Express Warranty;

    Count XII – Breach of Implied Warranty;

    Count XIV – Gross Negligence;

    Count XV – Unjust Enrichment;

    Count XVI – Loss of Consortium;

    Count XVII – Punitive Damages;

    Count XVIII – Discovery Rule and Tolling;

[DE 21 at 2]. Ethicon moved for Partial Summary Judgment and dismissal with prejudice of all of Ms. Cotton's claims except for Loss of Consortium (Count XVI), Punitive Damages (Count XVII), and Discovery Rule and Tolling (Count XVIII).

## II.    Standard of Review

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). The non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### III. Discussion

#### A. Choice of Law

Before considering the merits of parties' arguments, the Court must briefly address the choice of law issue. When a plaintiff files her claim directly into the MDL, as Ms. Cotton did in this case, the choice-of-law rules of the state where the plaintiff was implanted with the product applies. *See Ridgley v. Ethicon, Inc.*, 2017 WL 525854, at *2 (S.D.W. Va. Feb. 8, 2017). Since the products were implanted into Ms. Cotton's body in Indiana, Indiana substantive law applies to her claims. *See id*. Indiana applies a modified *lex loci delecti* test: the substantive law of the place where the tort occurs controls the case unless the location of the tort is an insignificant contact." *Id*. (citing *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004)). "Moreover, both parties agree that Indiana law applies in this case; therefore, this Court will apply Indiana law in this suit.

5

### B. Counts to Be Dismissed

To simplify the analysis, the Court first addresses the Counts that will be dismissed. In their response brief, the Cottons agreed to dismiss Count II (Strict Liability – Manufacture Defect), Count XI (Breach of Express Warranty), and Count XII (Breach of Implied Warranty, but only to the extent it sounds in contract). [DE 23 at 3]. Pursuant to these concessions, this Court **GRANTS** the Ethicon's Motion for Partial Summary Judgment as to Counts II, XI, and XII (to the extent it sounds in contract), all of which are **DISMISSED WITH PREJUDICE**.

### C. Counts to Be Merged

Ethicon next argues that the Cottons' claims set forth in Counts I (Negligence), Count III (Strict Liability – Failure to Warn), Count IV (Strict Liability – Defective Product), Count V (Liability – Design Defect), Count VI (Common Law Fraud), Count VIII (Constructive Fraud), Count IX (Negligent Misrepresentation), Count X (Negligent Infliction of Emotional Distress), Count XI (Breach of Express Warranty), Count XII (Breach of Implied Warranty), and Count XIV (Gross Negligence) should be subsumed by the Indiana Product Liability Act (IPLA) into a single cause of action, and therefore extinguished as stand-alone torts. The Cottons agree that each of those counts are incorporated into one claim under the IPLA except for Count IX (Negligent Misrepresentation). Therefore, the Court will address Count IX in a separate section.

The IPLA "codified the entire field of products liability" law in Indiana. *Weigle v. SPX Corp.*, 729 F.3d 724, 737 (7th Cir. 2013). The IPLA "governs all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. The Indiana Supreme Court has stated that it is "clear the legislature intended that the [IPLA] govern all product liability actions, whether the theory of liability is

negligence or strict liability in tort." *Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207, 212 (Ind. 1981). With respect to these Counts, the Cottons do not object to merging them. [DE 23 at 5]. As the law requires, and both parties agree, the Court thus **INCORPORATES** the following claims to form one product liability claim under the IPLA: Count I, III, IV, V, VI, VIII, IX, X, XII (to the extent it sounds in tort), and XIV.[3]

### D. Merged IPLA Claim

The Court now turns to the merged IPLA claim. Under the IPLA, a plaintiff must show a product is defective and unreasonably dangerous through one of three theories: design defect, manufacturing defect, or failure to warn. *Campbell Hausfeld/Scott Fetzer Co. v. Johnson,* 109 N.E.3d 953, 956 (Ind. 2018); *First Nat'l. Bank & Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 689 (7th Cir. 2004) (applying Indiana law). A plaintiff asserting an IPLA claim must establish that "(1) he or she was harmed by a product; (2) the product was sold 'in a defective condition unreasonably dangerous to any user or consumer'; (3) the plaintiff was a foreseeable user or consumer; (4) the defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition it was sold." *Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 635 (7th Cir. 2006) (quoting Ind. Code § 34–20–2–1).

As discussed above, the Cottons agreed to drop Count II (Strict Liability – Manufacturing Defect). Therefore, for summary judgment purposes, the Court no longer needs to analyze the IPLA claim based on a manufacturing defect theory. [DE 23 at 6]. The Court also notes that Ethicon requested that the claim for design defect under the IPLA be allowed to proceed at this time. [DE 21 at 3]. The Court also denied its recent motion for leave to file a supplemental

---

[3] Ethicon originally moved the Court to subsume Count I, II, III, IV, V, VI, VIII, IX, X, XI, XII, and XIV into a single IPLA cause of action. However, as the Court decided *supra* in Section III (B), the Court dismisses Count II, XI, and XII (to the extent it sounds in contract). Thus, the Court is not incorporating Count II, XI, and XII (to the extent it sounds in contract) into the IPLA claim, all of which are moot at this phase.

motion for summary judgment to address that claim. [DE 84]. Therefore, the Court will analyze the merged claim based on the remaining theory under the IPLA: failure to warn.

For failure to warn claims, "the party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions." Ind. Code § 34-20-2-2. But "[u]nder Indiana's learned-intermediary doctrine, a medical-device manufacturer can discharge this duty by providing adequate warnings to physicians." *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1015 (7th Cir. 2020). Manufacturers, such as Ethicon, have a duty only to warn the physicians, rather than the patients, of the risks associated with the use of their medical product. *See In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018). Under this doctrine, the plaintiff "must not only show that a manufacturer's warning was inadequate, but that such inadequacy affected the prescribing physician's use of the product and thereby injured the plaintiff." *Minisan v. Danek Med. Inc.*, 79 F. Supp. 2d 970, 978–79 (N.D. Ind. 1999). Therefore, the ultimate inquiry is whether the Cottons can show that supplemental warnings would have caused her physician to take a different course of action. *See Kaiser,* 947 F.3d at 1016 ("The causation question here is relatively straightforward: Would [the implanting doctor] have used the Prolift device to treat [plaintiff's] condition if Ethicon had provided additional warnings?").

Ethicon argues that summary judgment is appropriate if no alleged deficiencies in their warnings could have affected the implanting physician's recommendations [DE 22 at 11]; and, since the Cottons have not deposed the implanting surgeon in this case, they cannot meet their burden to show that a different warning would have altered his decision to implant the Prolift and TVT-O mesh products. *Id*. at 12. In response, the Cottons first point to the affidavit of Dr.

8

Carlton Lyons, a practicing gynecologist, and the doctor who implanted Ethicon's product (the mesh and TVT-O) into Ms. Cotton's body. Dr. Lyons' affidavit states the following (summarized):

- Ethicon did not tell him that the French doctors who helped develop the Prolift procedure had told Ethicon as early as 2003 about their concerns over erosion and contraction associated with implanting the mesh.
- Ethicon did not tell him that in April 2006 the French doctors advised Ethicon of the need to develop a safer mesh because of problems encountered with contraction and erosion.
- "I would have wanted to know about that information and I would of [sic] wanted to share it with Clara with respect to her decision to go forward with the Prolift procedure."
- "I received information and training from Ethicon regarding the Prolift product."

[DE 23-8]. This tends to demonstrate that Dr. Lyons was not independently aware of the risks associated with the Prolift system and, that had he known about them, he would have shared them with Ms. Cotton to better inform her decision to use the mesh products.

In order to succeed on a failure to warn claim, a plaintiff must prove that stronger warnings would have caused the physician to take a different course. *Kaiser*, 947 F.3d at 1016 (emphasis added). But the Cottons do not need to prove this claim at this stage in the litigation—they need only demonstrate that there is a genuine issue of material fact—whether additional warnings from Ethicon would have caused Dr. Lyons to take a different course of action. The Court finds that the Cottons have adequately supported their failure to warn claim at this stage in the litigation. Rule 56(c) expressly allows for parties to support their assertions with affidavits and does not specifically require depositions. Fed. R. Civ. 56(c)(1)(A). While a deposition would certainly elucidate Dr. Lyons' position on what he would have done with the additional information from Ethicon, viewing the record in the light most favorable to the Cottons, the Court finds Dr. Lyons' affidavit to be sufficient to demonstrate a genuine issue of material fact at this stage.

In addition to Dr. Lyons' affidavit, the Cottons also supplied the expert report prepared by Dr. Daniel Elliott, a specialist in treating pelvic organ prolapse and urinary incontinence, who reviewed Ms. Cotton's case specifically. [DE 23-2; 23-4; 23-5]. Relevant to the failure to warn inquiry, Dr. Elliott stated in his expert report:

> At the time of Ms. Cotton's implant, Ethicon was aware of the risks associated with the Prolift product lines. By deliberate actions Ethicon did not fully disclose in its Instructions for Use (IFU) at the time of Ms. Cotton's implantation even though Ethicon was aware of these risks based upon internal documentation and the deposition testimony of its employees. Since Ethicon knew of these risks, they should have been clearly placed on the IFUs so that not only would her implanting surgeon have been fully informed of the risks but also so Ms. Cotton could have been completely informed of the risks on her informed consent.

[DE 23-4 at 52-53]. Dr. Elliott provides a list of seventeen different risks that were known to Ethicon, but that Ms. Cotton was not informed of on her informed consent. *Id*. at 53-55. Dr. Elliott goes on to say that Ms. Cotton "did not receive information about the above risks because Prolift did not disclose them fully in its IFU and surgeons, including the implanting surgeon in Ms. Cotton's case, were not made aware of them." *Id*. at 55. He then stated, "Ms. Cotton was unable to make a fully informed decision about having the Ethicon devices implanted." *Id*. This tends to show that Ethicon was aware of a number of risks associated with their mesh products and failed to warn the physicians who were using them. Dr. Elliott concludes that "to a reasonable degree of medical certainty, Ms. Cotton suffered injuries that were not disclosed to her by Ethicon and the inadequate disclosures of these risks by Ethicon were a substantial factor and/or cause of Ms. Cotton's injuries." *Id*.

Therefore, the Court **DENIES** Ethicon's motion for summary judgment on the theory of failure to warn under the IPLA. Thus, Ms. Cotton's IPLA claim may proceed under both theories of failure to warn and design defect.

### E.  Count IX: Negligent Misrepresentation

The Cottons also argue that their negligent misrepresentation claim should advance because it is a viable claim under Indiana law as it arises out of a business transaction—the purchase of defective and misrepresented Prolift and TVT-O mesh products. [DE 23 at 9]. Indiana's definition of negligent misrepresentation was adopted from the Restatement (Second) of Torts § 552(1), which provides that:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*U.S. Bank N.A. v. Integrity Lane Title Corp.,* 929 N.E.2d 742, 747 (Ind. 2010). Therefore, to state a claim for negligent misrepresentation, the Cottons must demonstrate that Ethicon supplied "false information for the guidance [of the Cottons'] business transactions; that [Cottons] justifiably relied upon the information to their pecuniary loss; and that [Ethicon] failed to exercise reasonable care or competence in obtaining or communicating information." *Jasper v. Abbott Labs., Inc.*, 834 F. Supp. 2d 766, 772 (N.D. Ill. 2011) (quotation omitted). Historically, Indiana Courts declined to recognize the tort outside the employment context. But, "in 2010, the Indiana Supreme Court carved out another exception—it allowed a claim of negligent misrepresentation by a lender who relied upon a title search by a title insurance company." *Samaron Corp. v. United of Omaha Life Ins. Co.*, 2014 WL 4906314, at *12 (N.D. Ind. Sept. 29, 2014) (citing *Integrity,* 929 N.E.2d at 749).

Ethicon argues that the Cottons' claim for negligent misrepresentation fails because Indiana does not recognize the theory of negligent misrepresentation in personal injury cases. [DE 22 at 12]. Ethicon points to case law indicating that claims for negligent misrepresentation

11

are limited to business transactions: "Indiana law has recognized a claim for negligent misrepresentations only in limited contexts, and this claim requires a plaintiff to establish, among other elements, that the defendant 'supplie[d] false information for the guidance of others in their business transactions.'" *Fisk v. Medtronic, Inc.*, 2017 WL 4247983, at *8 (N.D. Ind. Sept. 25, 2017) (quoting *Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 628–29 (Ind. Ct. App. 1983)); *see also McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 896 (Ind. Ct. App. 2007). Ethicon also points to the holding in *Lautzenhiser v. Coloplast A/S*, 2012 WL 4530804, at *6 (S.D. Ind. Sept. 29, 2012) which declined to recognize a negligent misrepresentation claim in a similar products liability case first because "no Indiana case has extended negligent misrepresentation to cover concealment or omission" and, second, because "[a]ny alleged misrepresentations by [the defendant's employee] were in regard to the safety or efficacy of a potential medical procedure, not a business transaction." Ultimately, the court in *Lautzenhiser* dismissed the negligent misrepresentation claim from the product liability case because it found that there was no business transaction. *Id*.

In response, the Cottons argue that Ms. Cotton purchased, as part of her treatment, the products manufactured by Ethicon and without that business transaction, there would be no claim to assert against Ethicon. They first cite to the 2010 case where the Indiana Supreme Court carved out the additional exception for the tort and allowed a claim of negligent misrepresentation to proceed against a title insurance company. *See U.S. Bank N.A.*, 929 N.E.2d 742. The Cottons also argue that Ethicon provided false information on the safety and effectiveness of their products, which would have been important for Ms. Cotton to know. They then point to a recent district court holding which found that the Indiana Supreme Court "has indicated that application of a negligent misrepresentation claim *can* extend beyond employment

relationships." *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 823 (N.D. Ill. 2016) (emphasis added). And, the Cottons argue, may be potentially extended to the facts and circumstances of this case. But the Cottons failed to provide any other cases where Indiana courts have recognized a claim for negligent misrepresentation in a product liability suit.

Thus, similar to the holding in *Samaron Corp..*, 2014 WL 4906314, at *13 (N.D. Ind. Sept. 29, 2014), this Court recognizes that allowing Ms. Cotton's claim for negligent misrepresentation to proceed would represent an expansion of the tort as is currently recognized by Indiana courts. And "[i]t is not this Court's role to expand upon the availability of tort remedies that Indiana has made clear are to be very limited in scope." *Id.*; *see also Binns v. Ocwen Loan Servicing, LLC*, 2015 WL 5775827, at *18 (S.D. Ind. Apr. 1, 2015). Within that limited scope, Indiana courts have stated that such a claim requires that the defendant supplied the false information to others in their *business transactions*. "Not only was Ms. [Cotton] not entering a business transaction in connection with this alleged misrepresentation—she was undergoing a surgery—she was not even acquiring a product at the time—she was having the device *[implanted]*." *Fisk*, 2017 WL 4247983 at *8. As many courts have noted before, the Seventh Circuit has recognized the law of negligent misrepresentation in Indiana to be "relative chaos." *See Trytko v. Hubbell, Inc.*, 28 F.3d 715, 721 (7th Cir. 1994). Without more direction from Indiana courts in the area of negligent misrepresentation and medical product liability, this Court declines to expand the application of the tort to the facts of this case.[4]

---

[4] While the Court was not asked to certify the question to the Indiana Supreme Court, it declines to do so regardless. This case does not concern a matter of vital public concern, this claim is not outcome determinative to the case as it overlaps considerably with the claims asserted under the IPLA, and the Court sees no obstacle to future state court resolution of the issue. *See Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 378 (7th Cir. 2010). Even where, as here, "there is no clear guidance from a state court, ... certification is neither mandated nor always necessary." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Pate,* 275 F.3d 666, 672 (7th Cir. 2001)).

Therefore, the Court **GRANTS** Ethicon's Motion for Summary Judgment as to Count IX (Negligent Misrepresentation).

### F. Count XV: Unjust Enrichment

Finally, Ethicon argues that the Cottons' claim for unjust enrichment fails because it is an equitable remedy and not a vehicle for receiving compensatory damages. In response, the Cottons argue that their Unjust Enrichment claim should continue as it would include recovery of restitution. "To recover under an unjust enrichment claim, a plaintiff must generally show that he rendered a benefit to the defendant at the defendant's express or implied request, that the plaintiff expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust." *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012); *see also Woodruff, Tr. v. Ind. Family & Soc. Serv. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012). More specifically, "Indiana courts articulate three elements for this claim: (1) a benefit conferred upon another at the express or implied consent of such other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Good v. Ind. Teachers Ret. Fund*, 31 N.E.3d 978, 982 (Ind. Ct. App. 2015).

The Cottons assert that Ms. Cotton paid Ethicon for the Prolift and TVT-O mesh products, but she has not received the safe and effective devices for which she paid. [DE 48 at 53]. They further claim that it would be inequitable for Ethicon to keep this money since Ms. Cotton did not, in fact, receive a safe and effective medical device as represented by Ethicon. Taken as true, this would meet the unjust enrichment requirements. Ethicon seems not to dispute this part. But relying on *Lautzenhiser v. Coloplast A/S*, 2012 WL 4530804 (S.D. Ind. Sept. 29, 2012), Ethicon argues that "[a]n unjust enrichment claim seeking damages for personal injuries, healthcare costs, and lost wages therefore warrants dismissal. To the extent that Plaintiffs seek

such damages through their unjust enrichment claim, Ethicon is entitled to summary judgment on that claim." [DE 27 at 14]. Notably, the Cottons are seeking restitution here and not compensatory damages under this claim, nevertheless, Ethicon misconstrues the holding in *Lautzenhiser*. The Court denied the plaintiff's unjust enrichment claim not because the plaintiff "allege[d] personal injuries, health expenses, and lost wages," but because the plaintiff *only* "allege[d] personal injuries, health expenses, and lost wages" *Lautzenhiser*, 2012 WL 4530804 at *8 (emphasis added). That is, the plaintiff in *Lautzenhiser* failed to plea an equitable remedy, which the court noted would be restitution. *Id*.

Here, while the Cottons *are* asserting a proper claim for restitution, nevertheless, it fails because they did not demonstrate any evidence that meets the required elements of unjust enrichment. "Even if there is no express contract, a plaintiff may sometimes recover under the theory of unjust enrichment, which is also called *quantum meruit*, contract implied-in-law, constructive contract, or quasi-contract." *Kelly v. Levandoski*, 825 N.E.2d 850, 860 (Ind. Ct. App. 2005) (citing *Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind. 1991)). The Cottons have not alleged any kind of contract despite asserting their right to restitution. Neither the Cotton's complaint, nor their memorandum in response to the motion for summary judgment asserts that they had any form of contractual relationship or exchange with Ethicon. Nor have they attempted to demonstrate facts that could fit within the theory of unjust enrichment. The three required elements for an unjust enrichment claim are: "(1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012). The Cottons clearly expected a usable working product from Ethicon and paid for that product, but they have not alleged that Ethicon

either expressly or impliedly requested the purchase of their product. Nor have they argued that they expected any kind of payment after the exchange. The Cottons certainly expected a working product, but likely did not expect any payment following the implantation of the products.

Here, the Cottons seek equitable relief in the form of damages for restitution but have failed to support their claim for unjust enrichment with any facts to support their legal theory. Therefore, the Court **GRANTS** Ethicon's Motion for Summary Judgment as to Count XV (Unjust Enrichment).

### G. Remaining Counts

What remain unaddressed by both parties are Counts XVI (Loss of Consortium), XVII (Punitive Damages), and XVIII (Discovery Rule and Tolling). Because Ethicon in its motion did not address those claims, the Court allows those counts to proceed.

### V. Conclusion

Based on the foregoing, Ethicon's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**

1. The Court **GRANTS** Ethicon's motion for summary judgment on Count II (Strict Liability - Manufacturing Defect), Count XI (Breach of Express Warranty), and Count XII (Breach of Implied Warranty) to the extent it sounds in contract. These counts are **DISMISSED WITH PREJUDICE**.

2. The Cottons' Count I (Negligence), Count IV (Strict Liability – Defective Product), Count VI (Common Law Fraud), Count VIII (Constructive Fraud), Count X (Negligent Infliction of Emotional Distress), Count XII (Breach of Implied Warranty) but only to the extent it sounds in tort, Count XIV (Gross Negligence) are **INCORPORATED** into one IPLA claim and therefore **DENIED AS MOOT**.

3. The Court **DENIES** Ethicon's Motion for Partial Summary Judgment on Count III (Strict Liability – Failure to Warn). This count is **INCORPORATED** into the IPLA claim and proceeds based on the failure to warn theory under the IPLA.

4. The Court **DENIES** Ethicon's Motion for Partial Summary Judgment on Count V (Strict Liability – Design Defect). This count is **INCORPORATED** into the IPLA claim and proceeds based on the design defect theory under the IPLA.

5. The Court **GRANTS** Defendants' Motion for Partial Summary Judgment on Count IX (Negligent Misrepresentation). This count is **DISMISSED WITH PREJUDICE**.

6. The Court **GRANTS** Defendants' Motion for Partial Summary Judgment on Count XV (Unjust Enrichment). This count is **DISMISSED WITH PREJUDICE**.

7. Plaintiff's Count XVI (Loss of Consortium), Count XVII (Punitive Damages), Count XVIII (Discovery and Tolling) will proceed, as these Counts are not addressed in this order.

SO ORDERED.

ENTERED:  February 25, 2021

                                          /s/ JON E. DEGUILIO
                                          Chief Judge
                                          United States District Court